IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EMIL LIONEL WILLIAMS,               §
        Petitioner,               §
                      §
v.               §          CIVIL ACTION NO. H-05-1735
                      §
DOUG DRETKE, Director,               §
Texas Department of Criminal Justice -               §
Correctional Institutions Division,               §
        Respondent.               §

## MEMORANDUM AND ORDER

Emil Lionel Williams has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a conviction following the revocation of a sentence of deferred-adjudication probation. The respondent has filed a motion for summary judgment, arguing that the petitioner is not entitled to the relief that he seeks. (Docket Entry No. 13). The petitioner has filed a reply. (Docket Entry No. 14). After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

A Harris County grand jury returned an indictment against Emil Lionel Williams ("the petitioner") in cause number 851265, charging him with arson.[1] On January 18, 2001, the petitioner entered a plea of *nolo contendere* to those charges. Because arson is a second-

---

[1]    Because this case features testimony against petitioner Emil Lionel Williams by another individual named Joseph Lee Williams, the Court will refer to Emil Lionel Williams as "the petitioner" and the witness as "Joseph Williams."

degree felony, the petitioner faced a potential sentence of two to twenty years in prison. The 174th District Court of Harris County, Texas, accepted the petitioner's plea of "no contest," deferred a finding of guilt, and placed him on a form of probation known as "deferred adjudication" for a term of three years.[2]

In April of 2002, the State of Texas filed a motion to adjudicate guilt in the arson case based on the petitioner's failure to comply with the terms and conditions of his probation. In an amended motion filed in August of 2002, the State alleged that the petitioner had violated the terms and conditions of his probation by committing several criminal offenses, namely, by conspiring to commit theft as well as burglary with intent to commit theft, and by engaging in cruelty to animals, among other things. The trial court held a hearing on August 22, 2002, to determine whether to revoke the petitioner's deferred-adjudication probation. The evidence presented at that proceeding is set forth in more detail as necessary below. At the conclusion of that hearing the trial court found that the petitioner had violated the conditions of his probation by committing new violations of Texas law. As a result, the trial court proceeded to adjudicate the petitioner guilty of the underlying arson offense that had been lodged against him in cause number 851265, thereby effectively revoking his probation, and sentenced him to serve twenty years of imprisonment.

On direct appeal, the petitioner argued that the twenty-year prison sentence was

---

[2]       Texas no longer uses the term probation, providing instead for release on "community supervision." *See* TEX. CODE CRIM. PROC. art 42.12. For the sake of simplicity, the Court will refer to community supervision as probation.

disproportionate to the arson offense and therefore cruel and unusual in violation of the United States and Texas Constitutions. The intermediate appellate court rejected that claim and affirmed the conviction. *See Williams v. State*, No. 14-02-0933-CR, 2003 WL 22287357 (Tex. App. — Houston [14th Dist.] Oct. 7, 2003). The Texas Court of Criminal Appeals refused his petition for discretionary review.

The petitioner challenged the decision to revoke his initial sentence of deferred-adjudication probation by filing a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. In that application, the petitioner argued that he was denied due process and equal protection during the August 2002 hearing that resulted in the revocation of his probation and the adjudication of his guilt. In particular, the petitioner complained that he was denied a fundamentally fair proceeding because the trial court abused its discretion by: (1) failing to make a written statement of facts regarding the evidence relied upon to revoke his deferred-adjudication probation; (2) failing to require the State to prove every element of the violations alleged in the motion to adjudicate; (3) erroneously overruling objections to inadmissible hearsay; and (4) erroneously overruling objections to inadmissible testimony about other crimes, wrongs, or acts. The petitioner alleged further that he was denied effective assistance of counsel during the revocation hearing. The Texas Court of Criminal Appeals rejected all of the petitioner's claims without a written order based on findings made by the trial court without a hearing. *See Ex parte Williams*, No. 60,623-01 (Tex. Crim. App. April 6, 2005).

Although the petitioner has been released from custody since filing his federal petition

on May 13, 2005, the petitioner now seeks relief from the revocation of his deferred-adjudication probation and his resulting arson conviction under the federal habeas corpus statutes.[3]   He presents claims similar to the ones referenced above that were raised and rejected on state collateral review.  (Docket Entry No. 1, *Petition*, at 7-8A).  The respondent has filed a motion for summary judgment, arguing that the petitioner is not entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254.  The petitioner disagrees and he requests an evidentiary hearing.  The parties' contentions are discussed below under the governing standard of review.

## II.    STANDARD OF REVIEW

### A.    Federal Habeas Corpus Review

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness").  The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas

---

[3]     Texas prison officials confirm that the petitioner was released on parole in July of 2005. There is no dispute that the petitioner was in custody when he filed his federal habeas corpus petition.  In addition, because revocation of the petitioner's deferred-adjudication probation has resulted in his felony conviction, his claims are not moot.

4

corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The grounds for relief presented by the petitioner were raised on state habeas corpus review and rejected by the Texas Court of Criminal Appeals based on findings and conclusions made by the trial court. *See Ex parte Williams*, No. 60,623-01 (Tex. Crim. App. April 6, 2005). As a matter of law, a denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim). Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and not dismissed for procedural

reasons.[4]  *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v.*

*Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300

(5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim

on procedural grounds, there has not been an "adjudication on the merits" as contemplated

by the AEDPA).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly

deferential standard for evaluating state-court rulings, . . . , which demands that state court

decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

(internal citation omitted).  For claims adjudicated on the merits, the AEDPA's amendments

provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.      resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the Supreme
        Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the
        facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The burden is on the petitioner to show that he is entitled to relief

under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262

(5th Cir. 2002).

---

[4]      Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following
circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure
to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the
claim seeks retroactive application of a new rule of law to a conviction that was final before
the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial
error that, although of constitutional magnitude, did not have a "substantial and injurious
effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619,
637 (1993).

Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief only if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief only if the state court correctly divined a legal principle from the Supreme Court's jurisprudence, but misapplied that principle to the facts. *See id*. A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Section 2254(d)(2) governs pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding. *See Brewer v. Dretke*, 410 F.3d 773, 775 (5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing)). In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner

rebuts those findings with "clear and convincing evidence to the contrary." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework that controls this case. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Sometime after he submitted his federal habeas corpus petition, the petitioner filed a lengthy memorandum in support of his claims. (Docket Entry No. 5, *Memorandum*). The memorandum contains no certificate of service showing that the petitioner served this pleading on the respondent or his counsel as required by the Federal Rules of Civil Procedure and this Court's express instructions. (Docket Entry No. 2, *Order for an Answer*, ¶ 5). More importantly, the petitioner makes no specific effort to demonstrate that he merits relief under the AEDPA standard found in § 2254(d). (Docket Entry No. 5, *Memorandum*). For this reason alone, the petitioner fails to establish that he is entitled to a federal writ of habeas corpus. Nevertheless, the petitioner's claims are discussed further below in light of the applicable law, following a summary of the hearing that resulted in the revocation of his deferred-adjudication probation and the adjudication of his guilt.

## B.    Summary Judgment

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the

moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).  "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman*, 369 F.3d at 860 (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts.  *See McCallum*

*Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

While it is true that Rule 56 of the Federal Rules of Civil Procedure applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the Fifth Circuit has made clear that Rule 56 applies only to the extent that it does not conflict with the habeas rules. *See Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts). Therefore, 28 U.S.C. § 2254(e)(1) — which mandates that findings of fact made by a state court are "presumed to be correct" — overrides the ordinary rule that, in a summary-judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. *See id*. Thus, while state court fact findings may be presumed correct, a petitioner may rebut this presumption, thereby raising a genuine issue of material fact to defeat a summary judgment motion, with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). If there is a genuine and material fact issue, then an evidentiary hearing may be necessary, depending on whether the petitioner has also satisfied the standard found in § 2254(e)(2). *See Clark*, 202 F.3d at 766.

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th

10

Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## III.   SUMMARY OF THE REVOCATION HEARING

### A.    Effect of the Petitioner's Guilty Plea

Before addressing the revocation proceeding at issue, the Court pauses to consider the effect of the petitioner's plea of no contest, which is the equivalent of a guilty plea.[5] Ordinarily, criminal defendants have only a limited ability to challenge a conviction entered pursuant to a valid guilty plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted

---

[5]    "Under Texas law, a plea of no contest, or nolo contendere, has the same legal effect in a criminal proceeding as a plea of guilty: 'Such a plea before a jury admits the existence of all facts necessary to establish guilt and constitutes a waiver of the appellant's [constitutional] complaint.'" *Cook v. Lynaugh*, 821 F.2d 1072, 1075 (5th Cir. 1987) (quoting *Allen v. State*, 474 S.W.2d 480, 482 (Tex. Crim. App. 1972)); *see also Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990) (observing that a plea of nolo contendere is an admission of guilt, and therefore the law applicable to guilty-plea proceedings applies where a plea of no contest is entered).

11

> in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 770 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  A criminal defendant who pleads guilty may challenge jurisdictional defects that dispute "the very power of the State to bring the defendant into court to answer the charge against him."  *Blackledge v. Perry*, 417 U.S. 21, 30 (1974).  By pleading guilty to an offense, however, a criminal defendant waives all non-jurisdictional defects preceding the plea. *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993).

A review of the petition and the supporting memorandum confirms that the petitioner does not challenge the validity of his underlying guilty plea to the arson charge.  Instead, his claims for habeas corpus relief concern the hearing held on August 22, 2002, at which the trial court granted the State's motion to adjudicate guilt, thereby revoking the petitioner's placement on deferred-adjudication probation and sentencing him to serve twenty years' imprisonment.  The evidence presented at this hearing is summarized below to facilitate a discussion of the petitioner's claims for habeas corpus relief from the revocation of his deferred-adjudication probation.

**B.    The Petitioner's Revocation Hearing**

The primary condition imposed upon the petitioner when he was placed on deferred-adjudication probation required him to refrain from committing any offense against the laws

12

of the State of Texas or the United States. *See Ex parte Williams*, No. 60,623-01 at 165-66 (*Conditions of Community Supervision*). The record shows that the State of Texas filed a motion to adjudicate the petitioner's guilt of the arson offense and to revoke his deferred-adjudication probation based on a litany of new offenses, including conspiracy to commit theft, conspiracy to commit burglary with intent to commit theft, cruelty to animals, and other miscellaneous offenses. *See Ex parte Williams*, No. 60,623-01 at 170-71 (*Amended Motion to Adjudicate Guilt*). The trial court held a hearing to address the violations alleged in the State's motion on August 22, 2002, focusing mainly on the allegations that the petitioner conspired with others to commit theft by burglarizing a Compass Bank and that he had also engaged in cruelty to animals in violation of Texas law.

The State accused the petitioner of violating the terms of his probation by conspiring with Edward Lee Parker and Leon Mayberry to commit theft by burglarizing a Compass Bank on or about March 21, 2002.[6] In support of this allegation, the State presented testimony at the revocation hearing from an individual named Joseph Williams, who is of no apparent relation to the petitioner although the record suggests that the two were living at the same residence during the time that the Compass Bank burglary was planned. Joseph

---

[6]     A person commits theft in Texas if he unlawfully appropriates property with intent to deprive the owner of that property. *See* TEX. PENAL CODE § 31.03(a). A person commits burglary if, without the effective consent of the owner, he enters a habitation or a building not then open to the public, with intent to commit a felony, theft, or an assault. *See* TEX. PENAL CODE § 30.02(a). A person engages in a criminal conspiracy under Texas law if, with the intent that a felony be committed, he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense, and he or one or more of them performs an overt act in furtherance of the agreement. *See* TEX. PENAL CODE § 15.02(a).

Williams testified that the petitioner told him about a purported plan to burglarize a local Compass Bank in which he had an "inside hookup[.]"  (Court Reporter's Record, *Amended Motion to Adjudicate Guilt*, at 14).  Joseph Williams did not know the person's name, but stated that the insider was a "lady" who would provide a key to the bank's door and an alarm code.  (*Id.* at 14, 16).  According to Joseph Williams, he and the petitioner had planned to burglarize this bank with help from other individuals, including a man named Edward Lee Parker and another man named Leon Mayberry.  (*Id.* at 15-17).  Joseph Williams explained that he was unable to participate in the Compass Bank burglary because he was arrested for another offense and put in the Harris County Jail before the planned burglary took place.  (*Id.* at 16).

Joseph Williams testified that he knew that the petitioner had helped to commit the Compass Bank burglary because he spoke with the petitioner by telephone from the Harris County Jail after the incident occurred.  (*Id.* at 20).  During this conversation, the petitioner allegedly admitted to Joseph Williams "[i]n a roundabout way" that he had committed the Compass Bank burglary.  (*Id.* at 19).  The petitioner also told Joseph Williams that he was upset because, after the burglary had occurred, one of the co-perpetrators, Leon Mayberry, "got pulled over in Lufkin" and was arrested while in possession "of a lot of money."  (*Id.*).  Joseph Williams testified that he had previously committed other burglaries with the petitioner and that the burglary of the Compass Bank was committed with rotary cutting tools in a manner consistent with the previous crimes committed by the petitioner.  (*Id.* at 21-24).  According to Joseph Williams, the petitioner even had a safe at his residence on which to

14

practice the planned offense.  (*Id.* at 24).

On cross-examination, Joseph Williams conceded that he had a lengthy record of felony convictions.  (*Id.* at 26-30).  Joseph Williams emphasized, however, that he had never committed a bank burglary until he met the petitioner.  (*Id.* at 29).  Joseph Williams maintained that, although he was presently in custody on burglary charges, he had not been promised any kind of "deal" in exchange for his testimony.  (*Id.* at 30-31).  Under careful questioning by the petitioner's counsel, Joseph Williams stuck to his story that the petitioner had admitted, "[i]n a coded way," committing the Compass Bank burglary that occurred on March 21, 2002. (*Id.* at 35).

In addition to the testimony from Joseph Williams, the State presented testimony from the Compass Bank security director, Greg Rippey, who explained that a particular branch office was broken into on March 21, 2002, and that approximately $312,000 in cash was stolen from the "cash chest." (*Id.* at 65-67, 72).  According to Rippey, rotary cutting tools were used to cut open the cash chest. (*Id.* at 71).  Rippey testified that this burglary was one of several that had occurred at Compass Bank branch locations in the Houston area around that time, but he believed that in this particular instance the burglars had help from an "inside" source. (*Id.* at 67-70).  An employee code was used to disable the alarm. (*Id.* at 71).  The code had been issued to Shalitha Parker, who was married to the petitioner's associate, Edward Lee Parker. (*Id.*).  Thus, the burglary was committed in a manner consistent with the plan allegedly described by the petitioner to Joseph Williams.

The State presented additional evidence that a search of the petitioner's residence,

which was conducted pursuant to a warrant, recovered a safe that had been cut into with rotary tools as if it was practiced on.  (*Id.* at 73-77).  Also, Sergeant Saucier of the Angelina County Sheriff's Department testified that he stopped the petitioner's associate, Leon Mayberry, for a traffic violation near Lufkin, Texas, on March 23, 2002, and found a large quantity of currency ($93,422) was in Mayberry's truck.  (*Id.* at 46-48).  Sergeant Saucier stated that he was able to match pre-recorded serial numbers on some of the bills ("bait money") to determine that the cash recovered from Mayberry's truck was taken from the Compass Bank that was burglarized on March 21, 2002.  (*Id.* at 48).

As further proof of the petitioner's involvement in the Compass Bank burglary, the State presented evidence which suggested that he had a large quantity of cash after the burglary occurred and that he used this cash to pay off a delinquent tax bill on his home.  A local attorney named Charles Livingston testified that he went to the bank on March 28, 2002, shortly after the Compass Bank burglary occurred, with a shoe box full of cash (approximately $74,000).  (*Id.* at 50-52).  Livingston, who also happens to be the petitioner's cousin, testified that he used this cash to secure a cashier's check to pay a delinquent tax bill owed on the petitioner's residence.[7]  (*Id.* at 50-52).  Livingston denied that the cash came from the petitioner, stating only that "tons" of his "clients" paid him in cash.  (*Id.* at 53).  The

---

[7]     Leslie Taylor of the Aldine Independent School District testified that she received the cashier's check from Livingston to satisfy a sizeable delinquent tax bill that was owed on the petitioner's residence.  (*Id.* at 59-60).  The record identifies the residence as located at 1936 Dolly Wright, Houston, Texas.  This is the same address that is listed on the Court's official docket as the petitioner's current place of residence.

16

State argued, however, that the cash used to pay the tax bill on the petitioner's residence could have come from his share of the proceeds from the Compass Bank burglary.  (*Id.* at 118).

Apart from the theft and burglary charges, the State also accused the petitioner of breaching the terms of his probation by engaging in cruelty to animals in violation of Texas law.[8] Joseph Williams testified that the petitioner owned numerous pit bull dogs that he used for "fighting."  (Court Reporter's Record, *Motion to Adjudicate Guilt*, at 25).   Joseph Williams testified that he once saw the petitioner shoot a dog that was badly hurt in a dog fight.  (*Id.* at 26).  The State also presented testimony from Max Mixson, who is a cruelty investigator with the Houston Society for the Prevention of Cruelty to Animals ("HSPCA").  Mixson was apparently called to the petitioner's residence by police who were attempting to execute a search warrant related to the Compass Bank burglary charges.  Mixson testified that he found several pit bull dogs staked out in the back yard of the residence.  (*Id.* at 80).

---

[8]        A person commits the offense of cruelty to animals under Texas law if he intentionally or knowingly: (1) tortures or seriously overworks an animal; (2) fails unreasonably to provide necessary food, care, or shelter for an animal in his custody; (3) abandons unreasonably an animal in his custody; (4) transports or confines an animal in a cruel manner; (5) kills, injures, or administers poison to an animal . . . belonging to another without legal authority or the owner's effective consent; (6) causes one animal to fight with another; (7) uses a live animal as a lure in dog race training or in dog coursing on a racetrack; or (8) trips a horse.  *See* TEX. PENAL CODE § 42.09(a).  It is also an offense under the Texas animal cruelty statutes to engage in dog fighting.  *See Rogers v. State*, 760 S.W.2d 669 (Tex. App. — Tyler 1988, pet. ref'd).  A person commits an offense under this statute if he or she intentionally or knowingly: (1) causes a dog to fight with another dog; (2) for a pecuniary benefit, causes a dog to fight with another dog; (3) participates in the earnings or operates a facility used for dog fighting; (4) uses or permits another to use any real estate, building, or other property for dog fighting; (5) owns or trains a dog with the intent that the dog be used in an exhibition of dog fighting; or (6) attends as a spectator an exhibition of dog fighting.  *See* TEX. PENAL CODE § 42.10(a).

Mixson found marks on some of the dogs that were "consistent with dog fighting." (*Id.* at 81).

As further evidence that the petitioner had engaged in animal cruelty in connection with illegal dog fighting, Mixson noted that one dog was found chained to a treadmill. (*Id.*). This dog had a large scar on his back that Mixson believed was consistent with the type of wound sustained during a dog fight. (*Id.*). Mixson explained that treadmills were used to "condition" the dogs. (*Id.* at 84). Feathers found in front of the treadmill indicated to Mixson that a bird was likely chained toward the front of the machine to "inspire the dog to run." (*Id.* at 85). Mixson testified further that other items were found at the petitioner's residence that were associated with dog fighting, such as medication, training devices, trophies, and a "fight stick" commonly used to "pry dogs apart when they locked jaws during a fight." (*Id.* at 84-89). Mixson testified that the conditions found at the petitioner's residence were consistent with torture and cruelty to animals in violation of Texas law. (*Id.* at 88, 91).

After hearing all of the testimony and argument from both sides, the trial court found that the State had met its burden to show, by a preponderance of the evidence, that the petitioner had violated the terms of his probation by conspiring to commit theft and burglary of a building with intent to commit theft, as well as animal cruelty of the sort alleged in paragraphs 1, 2, 3, 4, 5, 6, and 7 of the State's amended motion to adjudicate. (*Id.* at 120). The trial court granted the State's motion, adjudicated the petitioner guilty of the second-degree felony offense of arson for which he had received the initial sentence of deferred-

18

adjudication probation, and imposed in its place a twenty-year prison sentence. (*Id.* at 121-22).

## IV.   DISCUSSION OF THE PETITIONER'S CLAIMS

The petitioner now seeks to overturn the arson conviction that resulted from the revocation of his deferred-adjudication probation.   As referenced above, the petitioner contends in general that his probation was revoked in violation of his right to due process and equal protection of the law.   The petitioner contends further that he was denied effective assistance of counsel.   These claims are addressed below under the federal habeas corpus standard of review, beginning with the petitioner's due process claim.

### A.   Due Process

The petitioner contends that he was denied due process during his revocation hearing because the trial court abused its discretion by:  (1) failing to make a written statement of facts regarding the evidence relied upon to revoke his deferred-adjudication probation; (2) failing to require the State to prove every element of the violations alleged in the motion to adjudicate;  (3) erroneously overruling objections to inadmissible hearsay; and (4) erroneously overruling objections to inadmissible testimony about other crimes, wrongs, or acts. (Docket Entry No. 1, *Petition*, at 7-8A).  The state habeas corpus court rejected these claims, concluding that the petitioner failed to show that the conviction entered against him at the revocation proceeding was improperly obtained.  *See Ex parte Williams*, No. 60,623-01 at 146.

As noted above, the proceeding challenged by the petitioner is the August 2002

19

hearing at which the trial court revoked his placement on deferred adjudication, which is a type of pre-judgment probation in Texas.  In contrast to regular probation, in which a defendant is found guilty and sentenced to probation, deferred adjudication means that a judge "may, after receiving a plea of guilty or plea of *nolo contendere*, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on [probation]."  TEX. CODE CRIM. PROC. 42.12 § 5(a); *see also* 4 *Texas Criminal Practice Guide* § 82.02 (Frank Maloney, *et al*. eds.) (distinguishing the types of probation or community supervision).  If the term of deferred-adjudication probation is successfully completed, then the proceedings are dismissed and the defendant is discharged.  *See* TEX. CODE CRIM. PROC. 42.12 § 5(c).  If the defendant fails to comply with the conditions of his release on deferred-adjudication supervision, however, the trial court may hold a hearing to determine whether it should proceed to adjudicate his guilt.  *See* TEX. CODE CRIM. PROC. 42.12 § 5(b).

The precise level of due process required for the hearing and related proceedings on revocation of deferred-adjudication probation is unclear.  Where the revocation of regular probation is concerned, the United States Supreme Court has decided that a defendant is not entitled to the full panoply of rights that apply in a criminal prosecution.  *See Gagnon v. Scarpelli,* 411 U.S. 778, 781 (1973).  In that context, it is settled that revocation proceedings need only meet the "minimum requirements of due process" by providing the following procedural safeguards:

1.  written notice of claimed violations of probation;

2.      disclosure to the probationer of evidence against him;

3.      opportunity to be heard in person and to present witnesses and documentary evidence;

4.      the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds a good cause for not allowing confrontation);

5.      a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

6.      a written statement by the fact finders as to the evidence relied on and reasons for revoking probation.

*Gagnon v. Scarpelli,* 411 U.S. 778, 781 (1973) (quoting *Morrissey*, 408 U.S. at 489); *see also Williams v. Johnson*, 171 F.3d 300, 304 (5th Cir.), *cert. denied*, 528 U.S. 882 (1999). There appears no reason these criteria should not govern here.  Accordingly, the Court applies this standard to the deferred-adjudication probation revocation in issue.

### 1.      Written Findings

Of the above-referenced minimum requirements, the only criteria that the trial court allegedly failed to meet in this instance was the one providing for a written statement of the fact finder as to the evidence relied on and reasons for revoking probation.  *See Gagnon*, 411 U.S. at 781.  This allegation is without merit.  The record shows that the trial court issued a written judgment upon the adjudication of guilt, which explains that probation was revoked because the petitioner committed a series of offenses, including theft, cruelty to animals, and burglary of a building.  *See Ex parte Williams*, No. 60,623-01 at 172-73 *Judgment Adjudicating Guilt*).  The written statement issued by the trial court in this case is sufficient

21

to satisfy the due process requirement listed in *Gagnon*.  The petitioner fails to show that the trial court failed to comply with the criteria found in *Gagnon*.  He further fails to demonstrate that the state court's decision to reject his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, he is not entitled to federal habeas corpus relief on this issue.

### 2.      State's Burden of Proof

The petitioner also argues that the trial court abused its discretion by failing to require the State to prove all elements of the violations alleged in the motion to adjudicate.  In other words, the petitioner argues that the trial court failed to require the State to prove that he had violated Texas law.  Thus, it appears that he challenges the legal sufficiency of the evidence that the petitioner actually committed the alleged violations.  Challenges to the legal sufficiency of the evidence in support of a criminal conviction traditionally are governed by *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under the well-settled *Jackson* standard, the governing inquiry requires only that a federal habeas corpus court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright v. West*, 505 U.S. 277, 284 (1992).

The *Jackson* standard is inapposite in a case such as the one presented by the petitioner in this instance, because that standard concerns whether the evidence was sufficient to show that a criminal conviction was supported by proof beyond a reasonable doubt.  *See, e.g., In re Winship*, 397 U.S. 358, 364 (1970) (observing that due process

requires that the State prove every element charged in a criminal offense beyond a reasonable doubt).  Probation revocations are not subject to a reasonable-doubt standard.  According to Texas law, a probation revocation proceeding is neither a criminal nor a civil trial, but an administrative hearing.  *See Bradley v. State*, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978).  To warrant revocation, the State need only establish by a preponderance of the evidence that a defendant violated the terms of his probation.  *See Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).  The State satisfies this burden when the greater weight of the credible evidence presented creates a reasonable belief that a condition of probation has been violated as alleged.  *See Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. 1981).

According to the United States Supreme Court, the revocation of probation passes constitutional muster under the Fourteenth Amendment Due Process Clause as long as it is not "totally devoid" of evidentiary support.  *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (per curiam).  A review of the revocation hearing transcript shows that there was ample proof presented to satisfy the State's burden to show that the petitioner violated the terms of his probation by committing more than one violation of Texas law.  Based on a review of the evidence presented at the petitioner's revocation hearing, as set out above, the credible evidence easily met the preponderance-of-the-evidence standard required to show that the petitioner violated a condition of his probation, as alleged, by committing new violations of Texas law.  Because the record is not totally devoid of evidence, this is sufficient to meet the burden of proof required for the revocation of deferred-adjudication probation under the Fourteenth Amendment Due Process Clause.

23

The petitioner fails to establish that the State did not meet its burden of proof or that his deferred-adjudication probation was revoked without sufficient evidence.  Likewise, he fails to demonstrate that the state habeas corpus court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, the petitioner is not entitled to federal habeas corpus relief on this issue.

### 3.    Evidentiary Rulings

In two related claims, the petitioner complains that the trial court erroneously overruled objections to inadmissible hearsay evidence and objections to inadmissible testimony of other crimes, wrongs, or acts.  The admissibility of evidence is governed by state law.  "'[Federal habeas corpus courts] do not sit as a "super" state supreme court' in such a proceeding to review errors under state law."  *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.), *cert. denied*, 502 U.S. 875 (1991) (quoting *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.), *cert. denied*, 400 U.S. 918 (1970); *Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir.), *cert. denied*, 440 U.S. 974 (1979)).  Even assuming there was an error, an alleged violation of state law does not merit federal habeas corpus relief.  As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, a federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors result in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d

944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984)).

In this instance, the petitioner objects to the trial court's ruling admitting testimony from Joseph Williams about the petitioner's plans to burglarize the Compass Bank. The testimony from Joseph Williams, which is summarized above, indicates that Williams was personally involved in the planning and preparation of certain aspects of the Compass Bank burglary as well as other burglaries with the petitioner. (Court Reporter's Record, *Amended Motion to Adjudicate Guilt*, at 13). Joseph Williams testified that he planned to participate in the actual burglary of the Compass Bank on March 21, 2002, but that he was unable to do so because he was "put back in jail" before the date that this caper was planned to take place.[9] (*Id*. at 16). Statements made by a co-conspirator of a party during the course of and in furtherance of the conspiracy are not hearsay. *See* TEX. R. EVID. 801(e)(2)(E); *see also* FED. R. EVID. 801(d)(2)(E). Because Joseph Williams had planned to participate in the conspiracy to burglarize the Compass Bank, his testimony about the planning was not hearsay. The petitioner therefore fails to show that the testimony of Joseph Williams was inadmissible as hearsay or that the trial court erred by allowing the evidence.

The petitioner also fails to show that the trial court erred by admitting testimony involving another crime, wrong, or act of the sort prohibited by Rule 404(b) of the Texas Rules of Evidence. The petitioner takes issue with the testimony given by Sergeant Saucier

---

[9]     According to the record, Joseph Williams was arrested by police while in the process of burglarizing another bank. According to Joseph Williams, the petitioner (Emil Williams) was with him on that occasion but escaped capture by the police. (Docket Entry No. 5, Exhibit G, *Affidavit in Support of Search Warrant*).

of the Angelina County Sheriff's Department, who provided information about the arrest of Leon Mayberry near Lufkin, Texas, while he was in possession of a large quantity of cash, including "bait money" taken during the Compass Bank burglary.  Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  The petitioner fails to show that evidence of Mayberry's arrest was the type prohibited by Rule 404(b).  Thus, he has not shown that the evidence was admitted in error or that the wrongful admission of the testimony resulted in a denial of fundamental fairness.

The petitioner fails to demonstrate a due process violation in connection with the trial court's evidentiary rulings.  Absent such a showing, the petitioner has not established that the state court's decision to reject his due process claims was contrary to or involved an unreasonable application of clearly established precedent.  Therefore, the petitioner is not entitled to federal habeas corpus relief on this issue.

**B.    Equal Protection**

The petitioner alleges generally that the trial court denied him equal protection of the law during his revocation proceeding because he was treated differently than other offenders whose "regular" probation was subject to revocation.  The petitioner made the same allegation in his state habeas corpus application.  *See Ex parte Williams*, No. 60,623-01 at 8.  The state habeas corpus court rejected this claim without making any particular finding.  *See id.* at 145-46.

The Fourteenth Amendment Equal Protection Clause simply requires that "all persons

similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir.), *cert. denied*, 528 U.S. 969 (1999). The petitioner complains that persons sentenced to "regular" probation as opposed to deferred-adjudication probation are treated differently under Texas law. The petitioner's allegations do not implicate a fundamental right. Therefore, any classification need only be rationally related to a legitimate government interest to survive a constitutional challenge. *See Chapman v. United States*, 500 U.S. 453, 465 (1991); *see also Cleburne*, 473 U.S. at 440 ("[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").

The petitioner argues that he has been denied equal protection because, unlike a regular probationer, he was precluded from appealing the revocation of his probation by Article 42.12, § 5(b) of the Texas Code of Criminal Procedure. Where a defendant has received a sentence of deferred-adjudication of probation, Article 42.12, § 5(b) governs proceedings in which a Texas court determines whether to revoke that probation and adjudicate the defendant's guilt of the underlying offense. This statute provides that, although a defendant may appeal once his guilt has been adjudicated, no appeal may be taken from the decision to revoke deferred-adjudication probation and to proceed with adjudication of guilt. *See* TEX. CODE CRIM. PROC. art. 42.12 § 5(b). Appeals can be taken from all proceedings conducted after the adjudication of guilt on the original charge, such as the assessment of punishment and pronouncement of sentence, but not from the decision to adjudicate itself. *See Hargesheimer v. State*, — S.W.3d —, 2006 WL 120009 (Jan. 18,

27

2006) (clarifying the right of a plea-bargain defendant to appeal in the context of deferred adjudication).

The Texas Court of Criminal Appeals has upheld the constitutionality of Article 42.12, § 5(b) and the limits placed on the statutory right to appeal. *See Phynes v. State*, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992). Texas intermediate appellate courts have repeatedly rejected claims similar to the one raised by the petitioner, finding no violation of the Equal Protection Clause. *See Atchison v. State*, 124 S.W.3d 755, 760 (Tex. App. — Austin 2003, pet. ref'd); *Faerman v. State*, 966 S.W.2d 843, 846-47 (Tex. App.— Houston [14th Dist.] 1998, no pet.); *Burger v. State*, 920 S.W.2d 433 (Tex. App. — Houston [1st Dist.] 1996, pet. ref'd) ; *Rocha v. State*, 903 S.W.2d 789, 791 (Tex. App. — Dallas 1995, no pet.). Noting that the alleged classification does not implicate a fundamental right worthy of strict scrutiny, these courts have found that the distinction between regular probationers and those receiving deferred-adjudication probation is rationally related to a legitimate state interest of conserving scarce resources:

> A regular probationer is found guilty before being placed on probation. By contrast, under deferred adjudication, there is no finding of guilt unless the defendant violates the terms of his deferred adjudication probation and the trial court, on the State's motion, decides to proceed with an adjudication of guilt. . . . If the deferred adjudication probationer successfully completes his probation, he will have no criminal record. Thus, deferred adjudication probationers are given a valuable benefit that is not afforded to regular probationers. The legislature could rationally have chosen to condition the award of such a benefit on the relinquishment of a right to appeal, thereby conserving the judicial and prosecutorial resources of the State. To allow deferred adjudication probationers to appeal these determinations would negate the benefit bestowed upon the State.

*Burger*, 920 S.W.2d at 437-38 (citing *Rocha*, 903 S.W.2d at 791); *see also Faerman*, 966 S.W.2d at 846-47 (holding same).

From this review, it does not appear that Texas defendants who receive regular probation are similarly situated to defendants who receive a sentence of deferred-adjudication probation. Further, this Court agrees that denying a deferred-adjudication probationer the right to appeal the trial court's determination to proceed with adjudication is rationally related to the legitimate state interest of conserving resources. There is no constitutional right to appeal a criminal sentence. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1955) ("[A] State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."). Because the right to appeal "is a statutory right, not a constitutional right," it can be waived pursuant to a guilty plea. *See United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992). Thus, the petitioner fails to state a valid equal protection claim. Likewise, he further fails to show that the state habeas corpus court's decision to reject that claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. It follows that the petitioner is not entitled to federal habeas corpus relief on this theory.

## C.    Ineffective Assistance of Counsel

The petitioner argues that he is entitled to federal habeas corpus relief because he was denied his right to the effective assistance of counsel during the revocation of his deferred adjudication. In particular, the petitioner complains that his counsel was deficient because he failed to: (1) investigate; (2) secure and present records during the revocation proceedings;

(3) interview and subpoena witnesses; (4) challenge the validity of the search of his residence or raise probable cause issues; (5) object to the prosecutor's improper closing argument; (6) impeach the testimony of the prosecution's "star witness," Joseph Williams; (7) file a motion to dismiss the State's motion to adjudicate guilt; (8) object to the sentence as disproportionate to the offense; (9) object to opinion testimony given by State's witness Max Mixson; (10) make specific and timely objections; and (11) preserve error. (Docket Entry No. 5, *Memorandum*, at 17). The state habeas corpus court rejected the petitioner's ineffective-assistance claim after concluding that he failed to demonstrate that his counsel's conduct was deficient or that he was actually prejudiced as the result of any of the above-referenced shortcomings. *See Ex parte Williams,* No. 60,623-01 at 145-46.

The traditional right to counsel is found in the Sixth Amendment to the United States Constitution, which provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel includes the right to effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In order to prevail on a Sixth Amendment claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

30

The petitioner argues that the state court's decision to reject his claims is contrary to, or involved an unreasonable application of, the Supreme Court's decision in *Strickland v. Washington*. The respondent disputes that the petitioner has the same right to effective assistance of counsel belonging to a criminal defendant, as articulated in *Strickland*. The Supreme Court's decision in *Strickland* concerns a criminal defendant's right to effective assistance of counsel *at trial* under the guarantee found in the Sixth Amendment. According to the respondent, the right to counsel in the probation revocation context is not clearly governed by *Strickland*.

There is no absolute right to counsel at a probation revocation hearing, although due process may require that an attorney be appointed in a particular case. *See Gagnon v. Scarpelli*, 411 U.S. 778, 787-91 (1973); *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979). The Supreme Court has emphasized that, in contrast to a criminal prosecution, the probation revocation proceeding is informal in nature. *See Gagnon*, 411 U.S. at 788-89 (noting "critical differences between criminal trials and probation or parole revocation hearings"). The Supreme Court has therefore held that states have no constitutional obligation to provide counsel for indigent persons in all probation or parole revocation cases, reasoning as follows:

> In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible to proof or is so simple as not to require either investigation or exposition by counsel.

*Gagnon*, 411 U.S. at 787.  The record reflects that counsel was not appointed for the petitioner in this case, but that his attorney, Mike Glover, was retained to represent him at the revocation proceeding.  (Clerk's Record, *Order* and *Motion to Substitute Counsel*, at 26-29).  Nevertheless, the motion to adjudicate the petitioner's deferred-adjudication probation accused him of several serious criminal offenses while on probation.  In this context, the petitioner may have had a right to counsel under the due process clause.[10]  The Court therefore assumes that *Strickland* applies in this instance.  The petitioner nevertheless fails to establish that his ineffective-assistance claims warrant relief because, for reasons detailed briefly below, he does not support his allegations with facts demonstrating that he meets the AEDPA standards to challenge the state habeas court's determinations rejecting the ineffective assistance of counsel claims or that, on the merits of those claims, that his counsel's performance was deficient and he suffered actual prejudice as a result.

### 1.    Failure to Investigate

In claims one and two, the petitioner alleges that his counsel was deficient for failing

---

[10]    The petitioner does not expressly argue that he was denied a due process right to counsel.  The respondent notes that the petitioner fails to cite authority or show that he was denied a constitutional right to effective assistance of counsel under a rule of criminal procedure established by the Supreme Court.  In doing so, the respondent correctly argues that any finding to the contrary would violate *Teague v. Lane*, 489 U.S. 288 (1989).  According to *Teague*,  this Court cannot grant federal habeas corpus relief if doing so would create a new rule.

In addition, the AEDPA prohibits federal habeas corpus relief unless the petitioner can demonstrate that the state court's decision to deny relief was contrary to, or involved an unreasonable application of "clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As noted elsewhere, the petitioner makes no such showing.

to "investigate" or "secure and present records during the revocation proceedings." A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have benefitted his defense. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir.) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)), *cert. denied*, 531 U.S. 931 (2000); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999).  In this instance, the petitioner alleges that an investigation by his counsel should have uncovered telephone records of collect calls reportedly placed by Joseph Williams from the Harris County Jail and records from the City of Houston Bureau of Animal Regulation and Control. The petitioner maintains that these records would have benefitted his defense.

Joseph Williams testified during the revocation hearing that he called the petitioner "collect" from the Harris County Jail after the Compass Bank burglary occurred.  The petitioner complains that his counsel was deficient for failing to investigate and to present evidence in the form of a telephone bill from his service provider ("SBC") to prove that the alleged collect call between him and Joseph Williams "never took place." The telephone bill is addressed to the petitioner, Emil Williams, who fails to explain why he did not provide the bill to his counsel.  Even if the failure to obtain these records was deficient performance, which is far from clear, the petitioner has not shown that the omission prejudiced him in any way.  To the contrary, the telephone bill tendered by the petitioner reflects that numerous collect calls in fact were made to the petitioner's residence after the Compass Bank burglary occurred.  If anything, these records support Joseph Williams's testimony that he and the

33

petitioner did talk after the burglary.  The records certainly do *not* clearly show that Joseph Williams and the petitioner "never" had a telephone conversation after the burglary.

The petitioner also faults his counsel for failing to present records from the Bureau of Animal Regulation and Control.  The petitioner argues that these records would have shown that his animals were in good condition.  Again, assuming for the sake of argument that counsel was deficient for failing to obtain these records, the petitioner can show no resulting prejudice.  If anything, the records presented by the petitioner are inculpatory and substantiate the State's allegation that he engaged in cruel treatment of the pit bull dogs kept at his residence.  One record, for example, states that an officer with the Bureau of Animal Regulation and Control arrived at the petitioner's residence and found a dog tied to a tread mill, just as Officer Mixson had described.  (Docket Entry No. 5, *Memorandum*, Exhibit E). Of the twelve pit bull dogs recovered, the record shows that some had "old wounds from fighting." (*Id.*).  One had an injured front leg and all were "hungry and dehydrated." (*Id.*).[11] Contrary to the petitioner's assertion, these records do not show that the animal cruelty charges were "fabricated."  The petitioner fails to establish any prejudice whatsoever from the alleged deficiency on his counsel's part for failing to adequately investigate or present evidence from the Bureau of Animal Regulation and Control on his behalf.

### 2.  Failure to Call Witnesses

---

[11]     The Court takes judicial notice that the Bureau of Animal Regulation and Control euthanized all of the dogs seized from the petitioner's residence.  *See Williams v. City of Houston Bureau of Animal Regulation and Control*, Civil Action No. H-02-cv-3234 (S.D. Tex.) (Docket Entry No. 1, *Complaint*).

In claim three, the petitioner complains that his counsel failed to interview and subpoena witnesses. The petitioner contends that his counsel should have interviewed and "possibly" issued subpoenas to secure testimony from officers and veterinarians with the Bureau of Animal Regulation and Control regarding the animal cruelty charges. The petitioner does not provide affidavits from any of these witnesses or suggest what their testimony would have been.

The Fifth Circuit has emphasized that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. (citation omitted.) Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986), and citing *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Absent affidavits or statements from any of the above-referenced witnesses, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre*, 238 F.3d at 636. Because the petitioner neither identifies the

witnesses that his attorney failed to call, nor provides sworn accounts of their proposed testimony, he fails to demonstrate that his counsel was deficient for failing to secure the presence of these witnesses at the revocation hearing.

### 3.    Failure to Challenge the Search Warrant

Claim four by the petitioner complains that his counsel was deficient for failing to challenge the validity of the search of his residence.  Citing *Franks v. Delaware*, 438 U.S. 154 (1978), the petitioner argues that the State's "star witness," Joseph Williams, is a liar and that all of the information obtained from Joseph Williams, which the police relied upon to secure the search warrant for the petitioner's residence, was false.  The petitioner argues therefore that his counsel should have raised objections to the search under *Franks*.

In *Franks v. Delaware*, the Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  438 U.S. 154, 155-56 (1978). If the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and the affidavit's remaining content is insufficient to establish probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

The record shows that Officer Rick Anderson of the Houston Police Department's

36

burglary and theft division prepared an affidavit for a search warrant for the petitioner's residence in connection with the Compass Bank burglary that occurred on or about March 21, 2002.  (Docket Entry No. 5, Exhibit G, *Affidavit For Search Warrant*).  In that affidavit, Officer Anderson details information about the burglary that he received from Security Director Greg Rippey.  Officer Anderson explains that he interviewed Joseph Williams while he was in jail on burglary charges stemming from an offense committed in a manner that was similar to a string of other burglaries.  During that interview, Joseph Williams implicated Emil Williams, Leon Mayberry, and Edward Lee Parker in the Compass Bank burglary. Joseph Williams' statements were substantiated by information from another law enforcement agency regarding Leon Mayberry's arrest following a traffic stop, during which he was found to have approximately $90,000 in cash including "bait" bills taken from the burglarized Compass Bank location.  Joseph Williams' statements were also substantiated with information from Rippey, who reported that an employee security code belonging to Edward Parker's wife was used during the burglary.

To demonstrate a violation of *Franks*, the petitioner must demonstrate that the affiant deliberately made false statements or that the affiant acted with reckless disregard for the truth.  *Franks*, 438 U.S. at 155-56.  In this instance, the petitioner does not identify *any* false statements made by Officer Anderson.  Instead, the petitioner accuses Joseph Williams of deliberately making false statements.  At issue under *Franks* is the deliberate falsehood or reckless disregard for the truth by the *affiant*, which in this case is Officer Anderson, and not Joseph Williams.  *See United States v. Wake*, 948 F.2d 1422, (5th Cir. 1991), *cert. denied*,

504 U.S. 975 (1992). Thus, the petitioner's reliance on *Franks* is misplaced.  The petitioner

not only fails to show that he had a valid challenge to the warrant under *Franks*, he also fails

to show that there were any other deficiencies in the affidavit that his counsel should have

challenged, but did not.  Therefore, the petitioner fails to establish that his counsel was

deficient for failing to object to the affidavit under *Franks*.

### 4. Failure to Object to Improper Argument

In claim five, the petitioner complains that his counsel was deficient for failing to

object to the prosecutor's "improper closing argument."  The petitioner points to several

remarks made by the prosecutor and argues that they were not appropriate summations of the

evidence.  The petitioner finds fault with portions of the argument made by the prosecutor

during her closing argument to support the State's contention that he committed the Compass

Bank burglary:

> This defendant had a tax bill in the amount of $91,000.  A cashier's check was
> obtained less than a week later in cash to pay that tax bill.  It's simply
> inconceivable that if this defendant didn't participate in that burglary, that he
> would have $74,000 from it if he wasn't a direct participant in it.  It's
> especially inconceivable when you look at the testimony of a person that did
> the burglaries with him in the past [Joseph Williams], [whom] he told that he
> committed this burglary, that all the elements were the same as the previous
> burglaries and where markings on the safe, and that this defendant was upset
> about Leon [Mayberry] being stopped in Lufkin, Texas.  Leon [Mayberry] was
> stopped with his $93,000, his portion, his one-third of the money that was
> taken.  This defendant used his portion after spending $20,000 of it to pay his
> tax bill.

(Court Reporter's Record, *Amended Motion to Adjudicate*, at 118-19).  The petitioner

contends that the prosecutor's statement about whether he used $74,000 in cash to pay the

tax bill was not supported by the evidence.   The petitioner complains further that the evidence does not support the prosecutor's statement that he told Joseph Williams he committed the Compass Bank burglary.  The Court disagrees that the prosecutor's arguments were improper as a matter of law.

A review of the hearing record, which is summarized above, shows that the prosecutor's statements are reasonable deductions from the evidence, which is an acceptable area of argument under Texas law.  *See Melton v. State*, 713 S.W.2d 107, 114 (Tex. Crim. App. 1986).  Although he could not or would not say with certainty where the cash came from, Charles Livingston testified that he received $74,000 in cash days after the Compass Bank burglary occurred and that he used this cash to obtain a cashier's check to pay the delinquent tax bill on the petitioner's residence.  Likewise, Joseph Williams testified that the petitioner indicated in a "roundabout" or "coded" way that he had committed the Compass Bank burglary.  The prosecutor's assertion that the petitioner burglarized the Compass Bank and then used his share of the proceeds to pay the delinquent tax bill was not clearly unreasonable in light of the evidence presented.  Because the statements are reasonable deductions from the evidence, the petitioner does not establish that the statements were improper or that his counsel was deficient for failing to object.

Alternatively, even if the comments were somehow improper, they did not rise to a level that rendered the proceeding fundamentally unfair.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (observing that the relevant question is whether prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due

39

process"). The prosecutor's arguments were made to a judge during a revocation proceeding and not at a criminal trial before a jury.  The presiding judge heard all of the evidence and argument from the petitioner's counsel, who maintained that the evidence was insufficient to show that the funds used to pay the tax debt were proceeds of a crime.  There was no evidence presented at the hearing to show that the petitioner was legitimately employed and that he had saved the sum necessary to pay such a huge delinquent tax bill.  In light of the other evidence linking the petitioner to the Compass Bank burglary, as well as the animal cruelty offenses, the petitioner fails to demonstrate that the isolated remarks made during closing arguments caused actual prejudice.  Absent a showing that his counsel was deficient for failure to object to the prosecutor's argument, or that actual prejudice resulted from that deficiency, the petitioner fails to establish a valid ineffective-assistance claim on this issue.

### 5.      Failure to Impeach

The petitioner complains in claim six that his counsel was deficient for failing to impeach the testimony of the prosecution's primary witness, Joseph Williams.  The petitioner argues that his attorney should have impeached the entire story told by Joseph Williams as "false" and forced the trial judge to disregard this evidence.  The record shows that the petitioner's counsel cross-examined Joseph Williams extensively, focusing on his lengthy criminal record, in an effort to show that this witness was unreliable.  The petitioner's counsel also argued at length during his closing statement that the State's main witness was not worthy of belief.

The petitioner does not suggest what else his counsel could have done to impeach Joseph Williams.  The Fifth Circuit has made clear that conclusory ineffective-assistance claims the type made by the petitioner do not merit federal habeas corpus relief.  *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).  Because the petitioner does not provide any support for his contention that his counsel was deficient for failing to impeach Joseph Williams on any specific topics, he fails to demonstrate a valid ineffective-assistance claim or to otherwise show that he is entitled to federal habeas corpus relief under the governing standard.

### 6.    Failure to File a Motion to Dismiss

The petitioner complains in claim seven that his counsel was deficient for failing to file a "motion to dismiss the State's motion to adjudicate guilt" for lack of probable cause.  He points to the affidavit in support of a search warrant that was presented by Officer Anderson and argues that the entire proceeding should have been dismissed because the State's primary witness, Joseph Williams, was unreliable.  The petitioner overlooks the fact

that many of the statements made by Joseph Williams were substantiated by evidence obtained by Officer Anderson from other sources. The petitioner does not cite any authority in support of his argument and he does not otherwise demonstrate that probable cause was lacking. As noted previously, a conclusory claim of ineffective-assistance does not merit federal habeas corpus relief. *See Collier*, 300 F.3d at 587. Because the petitioner fails to provide any support for his allegation, he fails to demonstrate a valid ineffective-assistance claim or to otherwise show that he is entitled to federal habeas corpus relief on this issue.

### 7.   Failure to Object to the Sentence

The petitioner argues in claim eight that his counsel was deficient for failing to object to the twenty-year prison sentence as disproportionate to the underlying arson offense. In support of this claim, the petitioner invokes the Eighth and Fourteenth Amendments, and *Solem v. Helm*, 463 U.S. 277 (1983). However, he provides no facts in support of his argument and he does not otherwise attempt to show that the sentence was disproportionately cruel and unusual.

The state intermediate appellate court addressed this claim and found, as an initial matter, that any error was not preserved for appeal because there was no timely objection to the trial court regarding the proportionality of the sentence. *See Williams v. State*, No. 14-02-0933-CR, 2003 WL 22287357, * 1 (Tex. App. — Houston [14th Dist.] Oct. 7, 2003, pet. ref'd). Because the petitioner failed to object to his punishment in the trial court, the state court of appeals held that his claim presented "nothing for our review." *Id.* Alternatively, the state court addressed the merits of the claim and found that, because the twenty-year

42

sentence was within the statutory limit for the felony offense of arson, the sentence imposed was not unconstitutionally cruel and unusual punishment as a matter of law. *Id.*

In Texas, where the punishment assessed by the judge or the jury was within statutorily prescribed limits, it is not cruel and unusual punishment in violation of the constitution. *See McNew v. State*, 608 S.W.2d 166, 174 (Tex. Crim. App. 1978) (citing *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Cooks v. State*, 5 S.W.3d 292, 298 (Tex. App. — Houston [14th Dist.] 1999, no pet.). Arson is a second degree felony offense punishable by imprisonment for a term of two to twenty years. Because the twenty-year sentence was within statutory limits, the petitioner fails to show that his counsel had a valid objection to make or that he was deficient for failing to object. Likewise, even if counsel was deficient for failing to object to the sentence, the petitioner cannot demonstrate actual prejudice because the state appellate court reviewed the substance of his complaint and found that it was without merit. Absent a showing that his counsel was deficient for failure to object to the sentence, or that actual prejudice resulted from that deficiency, the petitioner fails to establish a valid ineffective-assistance claim on this issue.

### 8.    Failure to Object to Testimony

The petitioner maintains in claim nine that his counsel was deficient for failing to object to opinion testimony given by HSPCA animal cruelty investigator Max Mixson. The petitioner complains that Mixson lacked "knowledge" to testify. The petitioner provides no other facts in support of his claim and no authority, other than a fleeting reference to Rule 703 of the Rules of Evidence. His claim is conclusory and does not merit federal habeas

43

corpus relief.  *See Collier*, 300 F.3d at 587.  Because the petitioner fails to provide any

support for his allegation, and none is apparent from the record, he fails to demonstrate a

valid ineffective-assistance claim.

### 9.      Failure to Make Objections and Preserve Error

In claims ten and eleven, the petitioner alleges in general that his counsel was

deficient for failing to make "specific and timely objections" and to otherwise "preserve

error."   The petitioner does not provide any details in support of these claims and no

authority showing that his counsel had a valid objection to make, but failed to lodge one.[12]

Likewise, the petitioner does not allege or show that he suffered any actual prejudice from

any failure to object or to preserve error.  His conclusory claim does not demonstrate an

ineffective-assistance claim and does not warrant federal habeas corpus relief.  *See Collier*,

300 F.3d at 587.

In summary, for the most part the petitioner offers little more than his own bare

assertion that his counsel's performance was deficient and that he suffered prejudice as a

result in that his deferred-adjudication probation was revoked. The petitioner's evidence and

arguments are insufficient to establish a constitutional violation or to show that the state

court's decision to reject his ineffective assistance of counsel claims was contrary to, or

involved an unreasonable application of, clearly established federal law.  Because the

---

[12]     For example, the petitioner includes an allegation that his counsel should have objected to
photographs admitted into evidence in connection with the animal cruelty charges.  He does
not identify which pictures were objectionable or provide any authority for an objection.
Thus, he fails to demonstrate that his counsel had a valid objection to make.

petitioner has failed to show that he is entitled to federal habeas corpus relief on any of his claims, the respondent's motion for summary judgment is granted.

## IV.   EVIDENTIARY HEARING

The petitioner has requested an evidentiary hearing on his claims.  To the extent that the petitioner failed to develop his facts before the state courts, the decision whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2).  Under this statute, if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court may hold an evidentiary hearing only if:

(A)   the claim relies on —

    (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  The petitioner makes no mention of 28 U.S.C. § 2254(e)(2) in his pleadings.  Nor does he otherwise attempt to show that he is entitled to an evidentiary hearing under this statute.

The decision whether to conduct an evidentiary hearing is committed to this Court's discretion. *See Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings);

*Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Robinson*, 151 F.3d at 268. "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases. This Court has been able to resolve all issues raised in this case by referring to the pleadings, the state court record, the transcripts, and exhibits. The petitioner's request for an evidentiary hearing is therefore denied.

## V.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 124 S.

46

Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim for the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue in this case.

## VI.   CONCLUSION

For these reasons, the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED**.

2.      This federal habeas corpus proceeding is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **February 28, 2006.**

Nancy F. Atlas
United States District Judge